UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JERRY A. WADE | CIVIL ACTION |
| VERSUS | |
| COX COMMUNICATIONS LOUISIANA, LLC, ET AL. | NO.: 11-00045-BAJ-DLD |

## ORDER AND RULING

Before the Court is **Defendants' Motion to Dismiss (Doc. 24)**, filed by Defendants Cox Communications Louisiana, LLC and CoxCom, Inc. ("Cox"), seeking an order from this Court dismissing with prejudice Plaintiff Jerry A. Wade's ("Wade") claims, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Alternatively, Cox requests Wade's claims be dismissed or stayed pursuant to the primary jurisdiction doctrine. Wade opposes the motion. (Doc. 24.) The motion was heard with oral argument. (Doc. 41.) Jurisdiction is proper under 28 U.S.C. § 1332.

I. **Background**

Wade filed this class action lawsuit against Cox, pursuant Louisiana Unfair Trade Practices and Consumer Protection Law, La. R. S. § 51:1401, *et seq.,* and La. R. S.§ 51:411, *et seq.*, after Cox allegedly failed to provide him high speed internet services as advertised and promised. Wade alleges that approximately one year after purchasing Cox's "Premier" high speed internet services, his internet speeds began decreasing during peak hours. (Doc. 1, ¶ 46.) He further alleges that Cox negligently and recklessly engaged

in false advertising when it made false representations regarding the speed, capability, accessibility, and connectivity of its high-speed internet services and system. (Doc. 1, *Claim for Relief.*) Specifically, Wade asserts that Cox did not tell their customers that high internet speeds can never be reached during peak times in any area serviced by an over saturated node. Wade's complaint also includes state law claims for breach of contract and negligence.[1] (Doc. 1, ¶¶ 84-88; Doc. 7, ¶¶ 89-95.) Wade seeks injunctive relief as well as actual and statutory damages, attorney's fees, and costs. (Doc. 1, *Prayer for Relief.*)

In the instant motion, Cox seeks an order from this Court dismissing with prejudice Wade's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Cox argues that Wade's claims must be dismissed because (1) his claims are perempted or prescribed; (2) state law prevents him from pursuing his unfair trade practices claims in a representative capacity; (3) state law prevents him from pursuing a private right of action for criminal false advertising; (4) Wade has failed to identify any statements by Cox in which it promised to deliver certain minimum speeds or guaranteed certain maximum speeds, or that such speeds would always be available; (5) Wade has not identified any statement that induced him to purchase Cox's Premier service, or any statement that was untrue at the time it was made; and (6) Wade's claims are barred by Louisiana's voluntary payment doctrine. Alternatively, Cox requests Wade's claims be dismissed or stayed pursuant to the primary jurisdiction doctrine.

---

[1] On February 16, 2011, Wade amended his complaint to add a state law negligence claim (Count 4), and a cause of action for injunctive relief (Count 5). (Doc. 7.)

Wade opposes the motion and argues that his unfair trade practices claims are subject to the continuing tort doctrine. He further contends that Louisiana's voluntary payment doctrine does not apply here because payment is not voluntary when the failure to pay would result in additional charges or termination of service. He also argues that, in exchange for receiving greater fees, Cox implicitly promised to provide faster internet services to its "preferred" customers than to its "essential" customers, and even faster service to its "premiere" customers. Wade further argues that the doctrine of primary jurisdiction does not apply because he seeks relief under Louisiana law, which the Federal Communications Commission ("FCC") is unable to grant.

## II. Treatment as a Rule 12(b)(6) Motion to Dismiss

As an initial matter, the Court must decide whether the instant motion can be treated as a motion to dismiss, or whether it must be converted to a motion for summary judgment. In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

However, when considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (finding consideration of insurance contracts unattached to the complaint permissible where they were attached to the motions to dismiss, referred to in the complaint, and central to the plaintiffs' claims); *see also Tellabs,*

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

Attached to the instant motion are five exhibits, all of which are printouts from Cox's website, including a description of the "Premier" high speed internet service and a copy of Cox's Subscriber Agreement. (Docs. 24-2, 24-3, 24-4, 24-5, 24-6.) The Court finds that Cox's website was quoted and incorporated by reference in Wade's complaint. See, e.g., Doc. 1, ¶¶ 22, 27. Further, the content of Cox's website, including the Subscriber Agreement, is central to Wade's claims. Thus, the Court concludes that the instant motion should be decided as a motion to dismiss under the standards of Rule 12(b)(6), and not converted to a motion for summary judgment.

### III. Standard of Law

Until the Supreme Court decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, pursuant to *Twombly*, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697

4

(2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. 678. A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Twombly*, 550 U.S. at 556. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.

## IV. Analysis

### A. Peremption (Count 1)

In support of its motion, Cox argues that Wade's Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPCPL") claims must be dismissed because they have been perempted. Cox contends that Wade's claims arose in 2008 when he first purchased the "Premier" internet service. However, Wade did not file the instant lawsuit until January 26, 2011. Thus, his LUTPCPL claims are barred by the one-year peremptive period in La. R.S. § 51:1409(E).

Cox further argues that this Court should follow the Louisiana Court of Appeal for the Third Circuit's holding in *Glod v. Baker*, 899 So.2d 642 (La. Ct. App. 3d Cir. 2005) that the continuing violation doctrine does not apply to LUTPCPL's peremptive period, rather than the Fifth Circuit's holding in *Tubos de Acero de Mexico, S.A. v. American Int'l Investment Corp., Inc.*, 292 F.3d 471 (5th Cir. 2002) that the continuing violation doctrine does apply to LUTPCPL's peremptive period.

In opposition, Wade argues that his claims under LUTPCPL are not perempted because Cox engaged in a continuing violation, which kept the peremptive period from running. Wade contends that Cox's violative acts continued until September 2010, when he first learned from a Cox service technician that "Premiere" internet service speeds could not be delivered during peak service hours due to an over saturated node. Wade also argues that this Court should follow the Fifth Circuit's holding in *Tubos* that the continuing violation doctrine applies to LUTPCPL's peremptive period.

Section 51:1409 of the LUTPCPL states, "[t]he action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." La. R. S. § 51:1409(E). "Although the statute uses the word 'prescribed,' courts have interpreted this period to be peremptive rather than prescriptive." *See Tubos*, 292 F.3d at 481. The significance of this distinction is that peremption is not subject to suspension, interruption, or renunciation. *Louisiana Division of Administration v. McInnis Bros. Constr.*, 701 So.2d 937, 939 (La. 1997). Further, "[t]he doctrine of *contra non valentum*, which suspends the running of prescription where the cause of action is not known or reasonably knowable by the plaintiff, is inapplicable to a peremptive period." *Id.*

"[T]he theory of a continuing tort has its roots in property damage cases and requires that the operating cause of the injury be a continuous one which results in continuous damages. *Crump v. Sabine River Authority*, 737 So.2d 720, 726 (La. 1999). "A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Id.* at 728. The operating cause of the injury must be a continuous one which results in continuous damages. *Id.* at 726. The mere failure to remedy a wrong does not constitute a continuing tort. *Terrebonne Parish School Board v. Mobil Oil Corp.*, 310 F.3d 870 (5th Cir. 2002).

Despite Cox's arguments to the contrary, this Court is bound by the Fifth Circuit's holding in *Tubos*, which has not been overruled, that the continuing violation doctrine applies to LUTPCPL's peremptive period. *See Checkpoint Fluidic Sys. Int'l, LTD v. Guccione*, No. 10-4505, 2012 U.S. Dist LEXIS 118069, at *20, 2012 WL 3637389, at *7 (E.D. La. Aug. 22, 2012). Thus, if Wade demonstrates that Cox committed a continuing violation, he may recover damages for Cox's acts that occurred in the year before January 26, 2011. *See R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776, 781 (5th Cir. 1963) (stating that under the continuing tort doctrine, a plaintiff may recover for damages inflicted within the period of limitations immediately preceding the filing of the complaint).

Here, Cox argues that the only relevant acts are the alleged false representations made by Cox in 2008. It contends, however, that these representations did not cause Wade damages because he received internet service without issue for at least one year after entering into the Subscriber Agreement. It further argues that Wade cannot now argue that Cox's subsequent representations constitute a continuing violation, because he failed to plead such a claim in his complaint.

7

In opposition, Wade argues that each statement made by Cox in its advertisements and on its website, after his initial entry into the Subscriber Agreement, qualify as a "transaction or act" under LUTPCPL, and thus, a continuing violation. To prove a continuous tort, however, Wade must demonstrate not only a continuous violation, but also continuous damage. *Crump*, 737 So.2d at 726.

Wade does not contest that, according to his complaint, the first "transaction or act" which gave rise to his claims were Cox's alleged fraudulent misrepresentations regarding the capabilities of its high speed internet potential in 2008. Instead, he argues that Cox's violations continued from its initial misrepresentations in 2008 until September 2010, when one of its service technicians admitted to Wade that it could not provide him "Premier" internet service. However, according to his complaint, Wade did not begin to note "incredibly slow internet speeds during peak hours" until "about a year after" he upgraded to the "Premier" internet service. (Doc. 1, ¶ 46.) Thus, Wade did not suffer any damages until approximately one year after the "transaction or act" which gave rise to his claims. Accordingly, it cannot be said that Wade suffered continuous damages. For this reason, the Court finds that the continuing tort doctrine does not apply. Thus, Wade's claims under LUTPCPL are perempted and must be dismissed with prejudice, pursuant to La. R. S. § 51:1409(E).

### B.  Prescription (Count 4)

In support of its motion, Cox also argues that Wade's state law negligence claim must be dismissed because it has been perempted. Cox contends that Wade discovered the facts upon which to base his claim more than one year before his suit was filed. Thus, his claim is barred by La. Civ. Code Ann. art. 3492.

8

In opposition, Wade argues that the doctrine of *contra non valentem* and the continuing tort doctrine applies. In the alternative, he contends that any prescriptive period that commenced upon his collection of internet speed data in 2009 began to run anew in September 2010, when the Cox service technician acknowledged Cox's liability.

Negligence claims are subject to a one (1) year liberative prescriptive period. La. Civ. Code Ann. art. 3492. The "date of discovery" from which prescription begins to run, is "the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant." *Teague v. St. Paul Fire & Marine Insur. Co.*, 974 So.2d 1266, 1275 (La. 2008). In other words, the date of discovery is the date the act or omission was discovered, or should have been discovered, by a reasonable person in the plaintiff's position. *Id.*

The Louisiana Supreme Court explained the reasonableness of the date of discovery as follows:

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start [the] running of prescription.

*Teague*, 974 So.2d at 1275-1276 (quoting *Campo v. Correa*, 828 So.2d 502, 510-11 (La. 2002) (internal citations omitted). Accordingly, here, prescription pursuant to La. Civ. Code

Ann. art. 3492 commenced to run when Wade knew or should have known of the existence of facts sufficient to have excited his attention and call for inquiry.

The doctrine of *contra non valentem* was created by the Louisiana courts as an exception to the general rules of prescription. *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 517 (5th Cir.2009). The doctrine "prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff." *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La.1993); *see also Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000). Louisiana courts recognize four factual situations in which the doctrine applies:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>
> (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Causby v. Perque Flooring Covering*, 707 So.2d 23, 25 (La. 1998).

Here, Wade argues that the forth factual situation applies. Specifically, that his cause of action was not known or reasonably knowable until September 2010, when the Cox service technician told him that Cox could not provide him with "Premier" internet service due to an over saturated node. However, this argument is without merit.

According to Wade's complaint, approximately one year after purchasing the "Premier" internet service, "Wade noted incredibly slow internet speeds during peak hours." (Doc. 1, ¶ 46.) Subsequently, Wade "began to perform speed tests on the internet service

**at all times** and noted that the internet speeds drastically decreased during peak hours. He was only able to reach speeds close to those advertised in the Premier package outside of peak hours. . . . " (Doc. 1, ¶ 46) (emphasis added). Thus, the facts underlying Wade's claim were known or reasonably knowable as of 2009. Further, while Wade may not have known that the drastically reduced internet speeds were due an over saturated node until September 2010, he was certainly aware, as of 2009, that he was not receiving internet service in accordance with Cox's alleged representations. Thus, the Court holds that the doctrine of *contra non valentem* does not apply.

In the alternative, Wade argues that if the Court finds that the prescriptive period began when he began performing internet speed tests in 2009, it was interrupted in September 2010, when Cox acknowledged, through its service technician, that it could not provide "Premier" internet service.

Louisiana Civil Code article 3464 provides that "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." If prescription is interrupted by acknowledgment, the time that has run is not counted, and prescription commences to run anew from the last day of interruption." *Demma v. Automobile Club Inter-Insurance Exchange*, 15 So. 3d 95, 98 (La. 2009) (citing Louisiana Civil Code article 3466)). However, as the Louisiana Supreme Court has explained, an "acknowledgment" under article 3464 is defined, substantively, as "a simple admission of liability." *See Demma*, 15 So. 3d at 98.

Even assuming that a Cox service technician told Wade that Cox could not provide him with "Premier" internet service due to an over saturated node, such does not amount to an admission of liability by Cox, and thus, does not meet the standard under Louisiana

law. Accordingly, article 3464 does not provide a basis for interrupting prescription.

For the reasons stated above, the Court also finds that the continuing tort doctrine does not apply to Wade's negligence claim. Thus, Wade's state law negligence claim is prescribed, and must be dismissed with prejudice, pursuant to La. Civ. Code Ann. art.3492.

### C. Private Right of Action (Count 2)

In support of its motion, Cox argues that there is no private right of action under La. R.S. § 51:411, and that Count 2 of Wade's complaint must be dismissed.

In opposition, Wade failed to address whether there is a private right of action under La. R.S. § 51:411. Indeed, the plain language of La. R.S. § 51:411 only provides criminal penalties, including a fine and imprisonment:

> [w]hoever violates this Section shall be fined not less than five hundred dollars nor more than twenty-five hundred dollars or imprisoned for not less than ten days nor more than six months, or both for each offense.

La. R.S. § 51:411 (E). Further, Wade has not provided, nor has the Court identified, any cases in which a court has held that La. R.S. § 51:411 provides civil remedies. Where, as here, the plaintiff seeks damages for violation of a criminal statute that provides no private right of action, the plaintiff's claim must be dismissed. *See, e.g., Gulf Coast Autoplex, LLC v. Gen. Motors Corp.*, No. 2:08-cv-779, 2008 WL 4558212, at *2, 2008 U.S. Dist. LEXIS 80359, at *5 (W.D. La. Oct. 9, 2008.) Thus, Wades claim under La. R.S. § 51:411 must be dismissed with prejudice.

### D. Breach of Contract (Count 3)

In support of its motion, Cox argues that Wade's breach of contract claim must be dismissed because he has failed to identify any contractual promise that Cox breached. Cox contends that the only terms of service referenced in Wade's complaint refer to

particular internet speeds listed in the Features and Limits of Service section of its High Speed Internet Acceptable Use Policy. It argues that this section merely lists the "maximum" speed available for various tiers of service, but does not specify any minimum speed or promise that the maximum speeds will always be available.

Cox also points to *Lyons v. CoxCom, Inc.*, 718 F. Supp. 2d 1232 (S.D. Cal. 2009), in which the court, in construing the same terms of service, held that the plaintiff had failed to identify any term that CoxCom breached, and rejected the plaintiff's argument that CoxCom promised a minimum speed for each tier of service, or that such a promise was implied.

Wade concedes that Cox's terms of service does not indicate a guaranteed minimum internet speed. In opposition, however, he argues that Cox implicitly promised to provide faster internet speeds to its "Premier" customers. He contends Cox undertook an implied obligation to provide him "Premier" internet speeds at all times when it advertised the higher internet speeds and charged him $26.00 more per month for the service. He further argues that Cox breached its obligation when it failed to provide him with higher internet speeds during peak hours.

Wade contends that *Lyons* is distinguishable because the plaintiff in that case alleged she did not receive higher internet speeds for different reasons than alleged here. Instead, he points to *Walter v. Hughes Communications, Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010), in which he contends the court found similar allegations regarding tiered internet services sufficient to defeat a motion to dismiss.

Generally, in order to establish a breach of contract under Louisiana law, a party must establish (1) an undertaking of an obligation to perform, (2) a breach of that

13

agreement by the obligor, and (3) damages suffered by the obligee on account of the breach. *Favrot v. Favrot*, 68 S. 3d 1099, 1109 (La. App. 4th Cir. 2011). In order to establish a breach of contract under Louisiana law, "a plaintiff must allege a breach of a specific provision of the contract." *Blackstone v. Chase Manhattan Mortg. Corp.*, 802 F. Supp. 2d 732, 738 (E.D. La. 2011) (citing *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2003).

Here, Wade has failed to identify a specific term of service that was breached by Cox. Instead, he alleges that he "reasonably believe[d] that each tier of the Service will attain a minimum speed that is at least as fast to the maximum speed promised for the tier below." (Doc. 1, ¶ 30.) Wade argues that Cox promised specific internet speeds. However, a review of Cox's High Speed Internet Acceptable Use Policy, Subscriber Agreement, and the Features and Limits of Service document indicate only a listing of the maximum speeds attainable in each tier of service, not a promise that at all times customers will receive those maximum speeds. Wade's complaint, nor the documents incorporated by reference in his complaint, do not include explicit or implied promises by Cox that "Premiere" internet customers will receive certain minimum or maximum internet speeds at all times.

Cox did not warrant that the internet service would be error free. Indeed, Cox's Subscriber Agreement states, "[n]either Cox, not its affiliates or any of its suppliers or licensors, employees or agents warrant the service will be uninterrupted or error free . . ." (Doc. 24-4, p. 6.) Like in *Lyons*, Cox's High Speed Internet Acceptable Use Policy, Subscriber Agreement, and the Features and Limits of Service documents make no guarantees regarding minimum speeds, and do not promise that the "Premier" internet

14

service will function at a certain speed at all times. Further, *Walter* is inapplicable here because the plaintiffs in that case did not allege a breach of contract claim. Accordingly, Wade's breach of contract claim must be dismissed with prejudice, as he has failed to allege a breach of a specific provision of his contract with Cox.

### E. Injunctive Relief (Count 5)

In support of its motion, Cox argues that Wade's claim for injunctive relief should also be dismissed because it is not a independent claim, but rather a remedy.

In opposition, Wade argues that Rule 23(b)(2) expressly provides him the right to allege a claim of injunctive relief.

"Generally, a request for injunctive relief is not considered an independent 'cause of action,' but rather a remedy sought to redress the wrongs alleged in the underlying substantive claims." *La. Crisis Assistance Ctr. v. Marzano-Lesnevich*, No. 11-2101, 2012 U.S. Dist. LEXIS 94248, at *15, 2012 WL 2717075, at *5 (E.D. La. July 9, 2012). Similarly, Louisiana law recognizes that a "cause of action" is distinct from the remedy sought by the aggrieved party. *See, e.g., Atlas Iron and Metal Co. v. Ashy*, 918 So. 2d 1205, 1212 (La. App. 3d Cir. 2006) (defining a cause of action as "[t]he fact or facts which give a person a right to judicial redress or relief against another . . . A situation or state of facts which would entitle [a] party to sustain [an] action and give him [the] right to seek a judicial remedy in his behalf"); *Coulon v. Gaylord Broad.*, 433 So. 2d 429, 430 (La. Ct. App. 4th Cir. 1983) ("A cause of action is a matter of substance concerned with the violation of a right, not a matter of remedy'"). In other words, although a request for injunctive relief arises out of a cause of action, the remedy sought and the cause of action itself are "separate and distinct." *La. Crisis Assistance Ctr.*, 2012 U.S. Dist. LEXIS at *18, 2012 WL 2717075, at *6 (citing *United*

States v. Smelser, 87 F.2d 799, 801 (5th Cir. 1937)).

Here, Wade's amended complaint added "an additional cause of action" entitled "Count 5 - Injunctive Relief." of Wade's complaint states that he "seeks an Order enjoining Cox from continuing to advertise internet service at speeds it cannot deliver." (Doc. 1, ¶ 97.) However, this is a remedy, not an independent cause of action. See *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, No. 10-1333, 2012 U.S. Dist. LEXIS 79677, at *28, 2012 WL 2087438, at *9 (E.D. La. June 8, 2012) ("injunctive relief is not itself a cause of action, but rather a remedy."); *In re S'holders of R.E. Heidt Constr. Co.*, No. 10-1260, 2011 U.S. Dist. LEXIS 51445, at *11-12, 2011 WL 1841251, at *4 (W.D. La. May 13, 2011) ("Continental conflates a cause of action, or claim, with the remedy afforded by a claim. An injunction provides a remedy, not a cause of action.").

Further, Rule 23(b)(2) is inapplicable. Rule 23(b)(2) describes the circumstances under which a class action suit may be filed:

> [a] class action may be maintained if Rule 23(a) is satisfied and if: . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. . .

Fed.R.Civ.P. 23(b)(2). However, that section of the Rule does not state that a plaintiff has a right to allege injunctive relief as an independent cause of action in his complaint. Further, Wade has not filed, nor has the Court granted, a motion for class certification. For these reasons, Wade's claim of injunctive relief must be dismissed with prejudice.

## V. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants Cox Communications Louisiana, LLC's and CoxCom, Inc.'s **Defendants' Motion to Dismiss (Doc. 24) is GRANTED.**

**IT IS FURTHER ORDERED** Plaintiff Jerry A. Wade's claims against Defendants are hereby **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 19th day of November, 2012.

                                  *Brian A. Jackson*
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**